

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4040 | **DATE** | 11/19/2004 |
| **CASE TITLE** | Neshawn Moore vs. Metropolitan Reclamation District | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendant's motion in limine to exclude evidence regarding any acts of sexual harassment occurring prior to 10/14/04 is denied. Defendant's amended motion in limine to exclude evidence related to an investigation conducted by Callie Baird is granted. Defendant's motion in limine to exclude evidence related to alleged sexual harassment against Saleema Ali is denied. Defendant's motion in limine to exclude evidence relating to Diana Gunn is granted is part and denied in part. Defendant's motion in limine to exclude evidence relating to conversations between Ron Hultgren, Jerry Culhane & Paul Wysocki is denied. Defendant's motion in limine to allow for admission of evidence related to the fake bomb incident is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 2 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | rbf | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 11/19/2004 | |
| hmb | courtroom deputy's initials | 2004 NOV 19 PM 3:50 | date mailed notice | |
| | | | hmb | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

NOV 2 2 2004

NESHAWN MOORE, )
)
    Plaintiff, )
)
v. )   No. 02 C 4040
)
)    Magistrate Judge Na~~~ ~~Nolan
METROPOLITAN WATER RECLAMATION )
DISTRICT OF GREATER CHICAGO )
    Defendant. )

## MEMORANDUM OPINION & ORDER

Plaintiff Neshawn Moore sued her employer Metropolitan Water Reclamation District of

Greater Chicago ("the District") for sexual harassment and retaliation in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e. The parties have consented to the

jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is

now before the court for ruling on the District's motions in limine.

### I.    Legal Standard

As part of a federal court's inherent authority to manage trials, the court may exclude

evidence through motions in limine. *Brown v. Joswiak*, No. 02 C 4622, 2004 WL 407001, at *1

(N.D. Ill. Feb. 24, 2004). However, evidence should be excluded in limine "only when that

evidence is clearly inadmissable on all potential grounds." *Id.* Certain evidentiary rulings must

wait until trial, in order for the court to make an accurate evaluation regarding admissibility

within the context of the trial. *Id.* Additionally, denial of a motion in limine does not mean that

the evidence at issue will be admitted at trial—appropriate objections can be raised at trial. *Id.*



## II.  The District's Motions in Limine

The District has filed six motions in limine, which shall be addressed in turn.

### A.  Motion in Limine to Exclude Evidence Regarding Any Acts of Sexual Harassment Occurring Prior to October 14, 2004

The District asks the court to bar Moore from introducing any evidence regarding acts of sexual harassment that occurred prior to October 14, 2000. In Illinois, in order to litigate an employment discrimination claim, a person must file an EEOC charge within 300 days of the alleged discrimination. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir. 2002). Here, Moore filed her EEOC charge on August 10, 2001. The question presented is whether acts that fall outside of the statute of limitations—*i.e.*, acts occurring before October 14, 2000—are actionable as part of Moore's hostile work environment claim.

The answer depends on whether the pre-limitations acts and the acts within the limitations period are sufficiently related to constitute a single hostile work environment claim. In *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 117 (2002), the Supreme Court held that "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability." In order to be timely, Moore needed only to file her EEOC charge within 300 days of any act that is part of the hostile work environment. *Id.* at 118. To be part of a single claim, however, the pre-limitations acts must bear some relation to the acts within the limitations period. *Id.* "A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120.

The District contends that Moore fails to allege any acts that occurred within the limitations period, and that even if she did, any acts within the limitations period are not related to the pre-limitations conduct. From what the court was able to discern from the briefs, Moore bases her hostile work environment claim on at least the following conduct.[1] During the pre-limitations period, Moore claims that (1) between January and August 2000, co-worker Ricky Allen exposed himself to her on four occasions, (2) in early 2000, Ron Hultgren asked her who she dates, if she dates outside her race, and who she has sex with and also made a derogatory comment about women in general, and (3) in 1998, Don Hicks attempted to hold her hand. Moore further claims that during the limitations period (4) she witnessed Allen and Sophia Evans having sex in the locker room, (5) Paul Wysocki backed her into the wall and expressed his fondness for her, and (6) Don Hicks told her that he overheard a conversation in which Wysocki, Culhane and Hultgren were discussing who would be the first to have sex with her.[2]

As a threshold matter, the court rejects the District's argument that Moore alleges no acts of sexual harassment during the limitations period. In its motion, the District describes two allegations regarding incidents that occurred within the limitations period: the incident with Wysocki backing Moore into a wall and the betting conversation between Wysocki, Culhane and Hultgren.[3] Notwithstanding those allegations, the District argues that there are no acts of

---

[1]This list is not intended to be exhaustive. In fact, a review of plaintiff's trial brief indicates that there are additional allegations that were not mentioned in the briefs relating to this motion in limine. Additionally, the descriptions of the conduct are derived solely from the District's characterization; Moore did not provide specific characterizations in her response brief.

[2]The motion in limine seeking to exclude evidence regarding this conversation is denied, as explained below.

[3]Moore's allegation that she witnessed Allen and Evans having sex is addressed separately below.

harassment within the limitations period because those incidents were not described in Moore's journal. There is a dispute between the parties regarding whether Moore's journal was exhaustive (as the District contends) or merely comprehensive but not exhaustive (as Moore contends). Resolution of this factual dispute is for the jury to decide, not the court. Further, if Moore failed to allege any act within the limitations period, then the District should have sought summary judgment on the grounds that the entire hostile work environment claim was time-barred, not just that the pre-limitations conduct was barred. In other words, if Moore failed to allege any act within the limitations period, her claim should not have survived summary judgment. *See Morgan*, 536 U.S. at 117 (an act contributing to the claim must occur within the statutory period).

As for the District's contention that the "conduct within the limitations period is not actionable sexual harassment," (Mot. ¶ 8), that argument misstates the law. Neither the Wysocki incident nor the betting conversation need to be independently actionable; the incidents need only contribute to the hostile work environment. *Morgan*, 536 U.S. at 117. "Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. S. Ill. Univ.*, 233 F.3d 1036, 1045 (7th Cir. 2000). That said, the court agrees that the incident in the locker room where Moore allegedly witnessed Ricky Allen and Sophia Evans having sex is not an act contributing to a hostile work environment. Although such conduct is completely inappropriate in the workplace, the conduct was neither directed at Moore nor directed at her gender. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002) (conduct must be directed at plaintiff because of her sex). Evidence regarding the incident Moore witnessed in the locker room is not relevant to her

4

hostile work environment claim, and even if it were, the court finds that the prejudicial value substantially outweighs any probative value; the evidence is barred under Rules 402 and 403.

The issue, then, is whether the pre-limitations conduct and conduct within the limitations period can be viewed as part of the same hostile work environment. The District argues that the pre-limitations conduct is not related to the conduct within the limitations period. The court, however, cannot agree. The District raised the same argument in its motion for summary judgment, arguing that all conduct prior to October 12, 2000 is time-barred. Although the district court's opinion makes no reference to the statute-of-limitations argument, the district court denied summary judgment. (District court order of 5.12.04, docket 67.) If the pre-limitations conduct were not part of Moore's hostile work environment claim, it is doubtful that her claim could have survived summary judgment based solely on the incident with Wysocki and the second-hand conversation. The reasonable inference is that by denying summary judgment, the district court has already rejected the District's position, albeit implicitly.

Even disregarding that inference, the District has failed to persuade the court that exclusion of the pre-limitations evidence is warranted. For example, the District argues that there is a substantial gap between Hultgren's derogatory comments in early 2000 and the betting conversation. It is not clear exactly when the betting conversation occurred, but the gap was less that two years. Regardless, as the Supreme Court explained in *Morgan*, it does not matter if there was a gap between the conduct "so long as each act is part of the whole." *Morgan*, 536 U.S. at 118. Given that Hultgren was involved in both incidents,[4] the gap in time does not affect

---

[4]According to plaintiff's trial brief, Hultgren was involved in more than these two incidents. It is unclear why plaintiff would fail to make that point in opposition to the motion in limine.

the relatedness. Further, the District's contention that there is a gap between incidents involving Hultgren is quite different from claiming that the harassment Moore experienced ceased for a substantial period of time. *Cf. Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004) (acts were not part of the same hostile work environment where there was a "three-year gap between the discriminatory acts alleged, with the last act occurring entirely by happenstance").

The District also argues that the allegations involve different actors. Admittedly, there is some variation in the actors. Allen's conduct occurred during the pre-limitations period whereas the incidents with Wysocki and Culhane occurred during the limitations period. However, Moore claims she reported Allen's harassment to Wysocki, who took no action. If Wysocki was aware of her earlier complaints, and later was an active contributor to the problem, a reasonable jury could conclude that the conduct during the limitations period "merely extended the same hostile work environment" that began in the pre-limitations period. *Mennis v. Prime Hospitality Corp.*, No. 03-4191, 2004 WL 1987229, at *8 (D. Minn. Sept. 7, 2004) (internal quotation marks and citation omitted). There is sufficient overlap for the conduct to be related to the same hostile work environment claim.[5]

The relatedness between Hicks' attempts to hold Moore's hand and the remainder of her hostile work environment claim seems more attenuated. *See Lucas*, 367 F.3d at 727 (acts "'so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations'"). However, based on the parties' submissions, it is not clear what evidence Moore

---

[5]The District also argues there is a difference in subject matter, but fails to explain how the subject matter differed. As a result, the court declines to address this perfunctory argument further.

intends to present regarding Hicks. As a result, the court cannot conclude that "the evidence is clearly inadmissible on all potential grounds," and thus cannot rule on the admissibility of the evidence without the context of trial. *Brown*, 2004 WL 407001, at *1.

For the reasons explained above, the District's motion in limine to exclude evidence of conduct that occurred prior to October 14, 2000 is denied.

### B. Amended Motion in Limine to Exclude Evidence Related to An Investigation Conducted by Callie Baird

The District further asks the court to exclude all evidence relating to an investigation conducted by attorney Callie Baird into sexual harassment at the Metropolitan Water Reclamation District. In or around 2003, the District retained Baird to conduct an independent investigation into allegations of sexual harassment at the District between 1992 and 2003. After her investigation, Baird prepared a sexual harassment investigative report for the District, dated May 23, 2003 ("the Baird Report"), which consists of a fifty-five page summary[6] and eight individual reports regarding Baird's reinvestigation into individual sexual harassment complaints. At trial, Moore wants to "introduce into evidence certain findings of the Report which contradict the findings and conclusions of the prior 'in-house' investigations by the District, [and] which directly refute the District's defense that it took reasonable steps to respond to allegations of sexual harassment, including the plaintiff's." (Pl.'s Consol. Resp. at 8.) Specifically, Moore plans to introduce (1) the discussion in the Baird Report relating to Baird's reinvestigation into sexual harassment allegations raised by Shirley Edenberg and Saleema Ali, and (2) Baird's discussion and recommendations relating to the District's sexual harassment

---

[6]The summary consists of an introduction, history of investigation, summary of investigation, conclusion and recommendations.

policy. According to Moore, these parts of the Report prove that the District's policy, and its implementation of the policy, were deficient, thus corroborating "plaintiff's claim that defendant failed or refused to legitimately investigate claims of sexual harassment." (Pl.'s Consol. Resp. at 9.)

In its amended motion in limine, the District argues that the Baird Report is not relevant, is inadmissible hearsay, that the danger of unfair prejudice outweighs any probative value, and that Moore is attempting to offer inappropriate expert testimony. Moore counters that the Report is relevant, and that it is admissible under the public record exception to the hearsay rule, Fed. R. Evid. 803(8)(C).[7] For the reasons that follow, the court grants the District's amended motion in limine because even if the Baird Report[8] is relevant, it is hearsay that does not qualify for admission under the public records exception, and the prejudicial value substantially outweighs the probative value.

There is no dispute that the Baird Report is a collection of out-of-court statements offered for the truth of the matter asserted, and thus, is hearsay. Fed. R. Evid. 801(C) and 802; *Hawthorne Partners v. AT&T Tech., Inc.*, No. 91 C 7167, 1994 WL 63054, at *5 (N.D. Ill. Feb. 17, 1994). As a result, the Report is admissible only if it falls within one of the exceptions to the hearsay rule. Fed. R. Evid. 802. Although Moore contends the Baird Report qualifies for

---

[7] These were the sole arguments Moore raised in opposition to the motion in limine regarding the Baird Report. (On the same day that Moore filed Plaintiff's Consolidated Responses to Defendant's Motions in limine, the District filed its amended motion in limine regarding the Baird Report. Although the court gave Moore time to respond to the amended motion in limine, she failed to do so.)

[8] For ease of reference, the court refers to the "Baird Report" rather than to the specific findings that Moore seeks to admit. However, the court's ruling pertains only to the specific findings of the Baird Report that Moore seeks to admit, *i.e.* (1) the discussion in the Baird Report relating to Baird's reinvestigation into sexual harassment allegations raised by Shirley Edenberg and Saleema Ali, and (2) Baird's discussion and recommendations relating to the District's sexual harassment policy.

admission under Fed. R. Evid. 803(8)(C), the public records exception, the court disagrees.

Rule 803(8)(C) applies to "[r]ecords, reports, statements or data compilations, in any form, of *public offices or agencies*, setting forth . . .(C) in civil actions and proceedings . . . factual findings resulting from an investigation made *pursuant to authority granted by law*, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(C) (emphasis added). Callie Baird, a private attorney, prepared the Baird Report. Her law firm is not a public office or agency, and she was not investigating pursuant to authority granted by law. In an effort to contort the Baird Report to fit within the public record exception, Moore relies primarily on *United States v. Davis*, 826 F. Supp. 617 (D.R.I. 1993) to argue that the Report is a public record because Baird conducted the investigation as a consultant for the District, which is a public agency. This argument is fatally flawed, however, because the report was Baird's, not the District's, and in any event, the District is not a public agency authorized by law to investigate sexual harassment claims.

As an initial matter, Moore reliance on *Davis* is misplaced because *Davis* is factually distinguishable from the case at bar. In *Davis*, a CERCLA action to recover environmental cleanup costs, the Environmental Protection Agency contracted with a "well-known, widely recognized hazardous waste cleanup consultant" to conduct a remedial investigation/feasibility study of the contaminated site. *Davis*, 826 F. Supp. at 619. The consultant compiled the results of its investigation into a report, which the EPA approved and released to the public. *Id.* at 619. The government filed a motion in limine to have the report admitted into evidence, which the court granted, finding that the report fell within the public records exception under Rule 803(8)(c). *Id.* at 624. Although written by the consultant, the court found that the report

9

"constitute[d] a finding by and on behalf of EPA resulting from extensive investigations" of the site conducted pursuant to law. *Id.* at 619. This conclusion is supported by the EPA's extensive involvement with the investigation and the report. For example, the EPA closely managed the consultant's investigation, the "field work and analysis were performed at the direction and under the guidance of EPA," the "proposed work plans were reviewed for conformity with EPA methodology and standards," and the EPA reviewed all drafts of the report for technical accuracy and regulatory compliance. *Id.* at 621-622. Additionally, the EPA approved the report and released it to the public. *Id.* at 619.

Here, in contrast, there is no evidence suggesting that the Baird Report can be deemed a finding by the District. The Report presents Baird's investigation and suggestions, not the District's. Baird's investigation was not done under strict supervision by the District—Baird conducted an independent, outside investigation. More importantly, even if the Report could be fairly characterized as the District's report rather than Baird's, the Report still would not qualify under the public record exception. Investigative findings are admissible "only if they relate to matters the agency is authorized to investigate[.]" *Mueller & Kirkpatrick*, 4 Fed. Evidence, § 456 at 567 (2d ed. 1994). Whereas the EPA is authorized under CERCLA to investigate environmental contamination, *Davis*, 826 F. Supp. at 619, the District has no comparable legal authority. The District is not the Equal Employment Opportunity Commission, authorized by law to investigate sexual harassment claims; rather, it is an agency that treats and disposes of sewage. The court agrees with the District that "a sexual harassment report prepared by a private law firm for a sewerage agency does not fit within the exception to hearsay provided by [Rule

803(8)(C)]."[9]  (Def.'s Reply at 10.)

Moreover, even if the Report were admissible under the public record exception, "the district court retains significant discretion as to whether such material ought to be admitted." *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 624 (7th Cir. 2003).  Here, even if the Baird Report qualified for admission under a hearsay exception, the court would exclude the Report under Rule 403 because the prejudicial effect of the Baird Report substantially outweighs its probative value due to the potential for confusing or misleading the jury.  There is a possibility that the jury would give substantial weight to the findings in the Baird Report that Moore seeks to admit, even though those findings have no direct connection to the merits of Moore's claim.[10] As a result, the jury might reach a conclusion regarding Moore's claim without properly assessing the evidence at trial.

Because the court finds that the Baird Report is hearsay that does not fall within the public records exception, and because the prejudicial value of the Report substantially outweighs its probative value, the court grants the District's motion in limine.[11]

---

[9]If the Baird Report qualified as a public record, the court would still have to assess whether there are circumstances that indicate lack of trustworthiness. Fed. R. Evid. 803(8)(C); *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 624 (7th Cir. 2003).  Because the Baird Report does not represent the factual findings of a public agency made pursuant to authority granted by law, the court need not evaluate the trustworthiness of the Report.  Nevertheless, it is worth noting that whether the Report contains trustworthy fact findings is a subject open to dispute, particularly in light of Baird's disclaimer that the summary includes examples of "*alleged* conduct in the workplace.  For a variety of reasons there was no way to substantiate or refute some of these comments." (Baird Report at 14.)

[10]Not surprisingly, Moore does not seek to admit into evidence Baird's analysis of Moore's sexual harassment complaint; Baird concluded that Moore's claim was unsubstantiated.

[11]In its motion, the District sought to exclude "testimony, documents, reports or other evidence or arguments related to an investigation conducted by Callie Baird . . . ." (Am. Mot. at 1.)  The briefs focused only on the Report, however, so this ruling is limited to the admissibility of the Report.  The court understands that Moore seeks to use at trial certain witness statements taken by Baird.  This ruling

## C.    Motion in Limine to Exclude Evidence Relating to Alleged Sexual Harassment Against Saleema Ali

The District also seeks to exclude evidence relating to allegations of sexual harassment raised by Saleema Ali, a Maintenance Laborer in the A Shift at the District's Stickney Water Reclamation Plant. According to the District, Ali complained for the first time on December 4, 2001 that she had been sexually harassed by a co-worker who, in a one-time incident, massaged her thighs. The District raises numerous reasons for exclusion, including that Ali did not work the same shift as Moore, that Ali's allegations post-dated Moore's, and that the nature of the harassment is different. Based on these reasons, the District argues the evidence is irrelevant under Fed. R. Evid. 402 and that the value of the evidence is outweighed by the danger of unfair prejudice under Fed. R. Evid. 403.[12] Moore responds that the evidence is relevant to establish (i) the existence of a sexually hostile work environment at the Stickney plant and (ii) that the District's in-house "EEO" manager Frances Wilkins conducted ineffective investigations into sexual harassment claims. As explained below, the motion in limine is denied.

To the extent the District argues that a co-worker's one-time experience of harassment is not relevant to Moore's hostile work environment claim, the District has failed to establish that the evidence regarding Ali is "clearly inadmissible on all potential grounds." *Brown*, 2004 WL

_____

does not address the admissibility of those exhibits; the court will address that issue at the pretrial conference.

[12]The District also raised a challenge under Rule 404(b), arguing that evidence of other wrongs "is not admissible to prove the character of a person in order to show an action in conformity therewith." Fed. R. Evid. 404(b). This objection is overruled because the District failed to develop this argument in any meaningful manner and it is unclear how Rule 404(b) could apply. For example, given that Ali and Moore complained about different harassers, the District's 404(b) argument seems inapplicable regarding whether Ali's experience is admissible for purposes of establishing the existence of a hostile work environment.

407001, at *1. To prevail at trial, Moore must establish that she personally was subjected to a hostile work environment. *Hawkins v. Groot Indus., Inc.*, No. 01 C 1731, 2003 WL 1720069, at *3 (N.D. Ill. Mar. 31, 2003). Nevertheless, in evaluating her claim, "the trier of fact must examine the totality of circumstances, including evidence of harassment directed at employees other than the plaintiff." *Id.* (internal quotation marks and citation omitted). Evidence regarding Ali's harassment claim could be relevant, provided that Moore knew about Ali's harassment experience at or around the time the harassment occurred. *Gleason v. Mesirow Fin. Inc.*, 118 F.3d 1134, 1144 (7th Cir. 1997) (although incidents directed at others may not have as great an impact as incidents directed at plaintiff, such incidents still have "some relevance in demonstrating the existence of a hostile work environment); *Mason*, 233 F.3d at 1046 (for incidents of discrimination to be relevant to plaintiff's claim, plaintiff must know about them); *United States Equal Employment Opportunity Comm'n v. Caterpillar, Inc.*, No. 03 C 5637, 2004 WL 2092003, at *10 (N.D. Ill. Sept. 14, 2004). This is particularly true if Ali's experience occurred during the time frame in which Moore contends she experienced a hostile work environment. The timing of the events, and whether Moore had knowledge of Ali's experience, are facts that are not clear to the court based on the parties' briefs. Additionally, the court is not persuaded that the prejudicial value of the evidence outweighs its probative value. The District's arguments under Rules 402 and 403 are overruled at this time. The admissibility of this evidence must be decided within the context of trial.

Likewise, the court cannot conclude that evidence regarding Wilkins' investigation into Ali's claims is clearly inadmissible (aside from evidence stemming from the Baird Report, which has already been excluded). The evidence regarding Wilkins' investigation into Ali's claim may

13

be relevant to Moore's theory that the District's in-house "EEO" manager Frances Wilkins conducted ineffective investigations into sexual harassment claims. The District argues that proof of an ineffective investigation into Ali's claim, by itself, cannot establish that Wilkins failed to properly investigate Moore's claim. That may be true. But it is clear that, at a minimum, Moore intends to challenge the reasonableness of Wilkins' investigation into her own claim as well. Moreover, the District plans to defend the case by showing the reasonableness of its responses to sexual harassment claims, which likely will involve not only how the District handled Moore's claim, but what its policy is, etc. Without the context of trial, the court cannot conclude that the information is irrelevant. Further, the court disagrees that the prejudicial value substantially outweighs the probative value.

Accordingly, the motion in limine to bar evidence relating to Saleema Ali is denied.

**D.      Motion in Limine to Exclude Evidence Relating to Diana Gunn**

The District also seeks to exclude any evidence relating to Diana Gunn, whose employment at the Stickney plant overlapped with Moore's. Based on the content of a statement Gunn gave during the course of an investigation into Moore's allegations, the District argues that Gunn's testimony and any materials related to her testimony are inadmissible because they are irrelevant under Rule 402, unduly prejudicial under Rule 403, and inadmissible under Rule 404(b). The District further argues that Gunn's testimony lacks foundation, is based on rumors and conjecture, and would involve hearsay. After reviewing Gunn's statement, it is evident that parts of her statement were based on rumors, gossip, and events that Gunn learned of after she left the Stickney plant. However, when Moore responded to the motion in limine, she specified the testimony she seeks to elicit from Gunn, which is limited to Gunn's observations while she

14

worked at the Stickney plant—namely, her observation that "Neshawn used to wear dresses to work, but she stopped wearing make-up and wearing pants . . . ."[13] (Pl.'s Consol. Resp. at 14.) The court agrees that Gunn may testify regarding that observation, provided that it is, in fact, based on Gunn's personal observations while working at the Stickney plant. Despite the District's argument to the contrary, this observation is circumstantial evidence relevant to the impact of the purportedly hostile work environment on Moore. The evidence is not unduly prejudicial, either, so Rule 403 is not a bar. As for Rule 404(b), it is unclear how that rule could apply. The motion in limine regarding Diana Gunn is denied to the extent the District seeks to bar testimony regarding Gunn's observations of Moore.

In response to the motion in limine, Moore argues only for admission of Gunn's observation that Moore stopped wearing dresses and makeup. As a result, Moore evidently concedes that testimony regarding Gunn's explanation for the change in Moore's dress ("so that people would stop treating her like they were treating her"),[14] Gunn's experiences at the plant unrelated to Moore (e.g., "I have been in a situation where my ass was grabbed"), as well as any testimony based on rumors, gossip, and information Gunn heard after she left the Stickney plant, are all inadmissible. The motion in limine is therefore granted as it pertains to those aspects of Gunn's testimony.

---

[13]This statement is ambiguous, but the court assumes Gunn meant that Moore started wearing pants instead of dresses.

[14]Gunn's explanation is likely either based on speculation or a hearsay statement from Moore, and thus would be inadmissible.

**E.     Motion in Limine to Exclude Evidence Relating to Conversation Between Ron Hultgren, Jerry Culhane & Paul Wysocki Overheard by Donald Hicks**

Additionally, the District asks the court to exclude, in limine, evidence relating to a conversation that Don Hicks allegedly overheard between Ron Hultgren, Jerry Culhane, and Paul Wysocki regarding who would be the first person to receive oral sex from Moore. Although Moore did not hear the conversation herself, Hicks relayed the substance of the conversation to her. As explained below, because none of the District's arguments warrant exclusion of the evidence, the motion in limine is denied.

First, the District argues that the conversation is irrelevant because Moore did not hear it herself. The court disagrees. Although without more, such "'through the grapevine' or 'second-hand' conduct is not sufficiently pervasive or severe to create a hostile work environment," *Mason*, 233 F.3d at 1046 n.9, the overheard conversation is not Moore's sole evidence. Just as evidence regarding harassment experienced by others is relevant to a plaintiff's hostile work environment claim if the plaintiff knew about the harassment, *e.g.*, *Caterpillar*, 2004 WL 2092003, at *10, the demeaning betting conversation is relevant to Moore's claim even though she did not hear the conversation first-hand.

Second, the District contends that the conversation is not sufficiently severe or pervasive, standing alone, to create a hostile work environment. But as explained earlier, this argument reflects a misunderstanding of what the law requires. "Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason*, 233 F.3d at 1045. The conversation need not be actionable in isolation, it need only be an act contributing to a hostile work environment.

16

Third, the District objects that the conversation is hearsay, and thus, inadmissible. Although Moore failed to raise any substantive counterargument in opposition to the motion, it is evident to the court that the conversation is not being offered for the truth of the matter asserted (*i.e.,* whether any of the three men would actually receive oral sex from plaintiff), but rather, for its effect on Moore. The conversation is therefore not hearsay.

Finally, the District argues that the evidence should be excluded under Rule 403 because the danger of unfair prejudice substantially outweighs the probative value. Given the District's failure to articulate anything more than a generic objection, this objection is overruled. Accordingly, the District's motion in limine to exclude evidence relating to the betting conversation between Wysocki, Culhane and Hultgren is denied.

**F.      Motion in Limine to Allow for Admission of Evidence Related to the Fake Bomb Incident**

The District also filed a motion in limine asking the court to admit evidence related to a fake bomb incident. Some background information is necessary to understand this motion. In or around October 2002, a fake bomb was found under Moore's car while she was at work. According to Moore's then-boyfriend, David Casanova, Moore convinced him to fabricate the fake bomb, plant it under her car, then call the District to report that there was a bomb under Moore's car, apparently in an effort to draw attention to her harassment claims. Casanova has confessed to his involvement in the fake bomb incident, and there is a pending charge against Moore for misdemeanor disorderly conduct. It is undisputed that the fake bomb incident occurred, but Moore maintains that she had no involvement in the incident. In fact, during her deposition in this case, Moore claimed that the fake bomb was planted in retaliation for her

17

claims of sexual harassment. Moore no longer intends to use the fake bomb incident in support of her retaliation claim, however. In fact, in December 2003, Moore filed a motion in limine to exclude all evidence relating to the fake bomb incident. The District opposed the motion, arguing that the fake bomb incident was relevant to the credibility of Moore's claims. (Def.'s Resp. to Pl.'s Motions in Limine at 4.) The district court granted the motion, finding that the danger of unfair prejudice substantially outweighed the probative value and further finding that consideration of the evidence effectively would require a trial within a trial. (District court order of 12.17.03, docket 48.)

The District now asks the court to alter the prior ruling excluding the fake bomb evidence,[15] advancing new theories of admissibility. Specifically, the District contends that the fake bomb evidence is admissible under Rule 404(b) as proof of a scheme or plan,[16] and also is necessary to rebut Moore's claims of emotional distress and damages.

In the Seventh Circuit, evidence of prior acts is admissible under Rule 404(b) only if it satisfies a four-part test. *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 494 (7th Cir. 1998). First, the "evidence must be directed toward establishing something at issue other than a party's propensity to commit the act charged[.]" Id. Second, the "other act must be similar enough and close enough in time to be relevant to the matter at issue[.]" *Id.* Third, the "evidence must be such that the jury could find that the act occurred and the party in question committed it[.]" *Id.* at

---

[15]"A ruling on a motion *in limine* is interlocutory in nature and subject to change during the course of the trial." *Berggruen v. Caterpillar, Inc.*, No. 92 C 5500, 1995 WL 708665, at *1 (N.D. Ill. Nov. 29, 1995).

[16]Under Rule 404(b), evidence of other crimes, wrongs or acts is admissible if offered "as proof of motive, opportunity, intent, preparation, *plan*, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b) (emphasis added).

494-495. Finally, the "prejudicial effect of the evidence must not substantially outweigh its probative value." *Id.* at 495.

The District argues that Moore "had a scheme or plan to defraud the defendant by fabricating false claims of sexual harassment and retaliation for her own financial gain." (Mot. ¶ 8.) As evidence of this plan, in addition to Casanova's testimony regarding the fake bomb incident, the District intends to introduce (i) testimony from Sophia Evans that Moore told Evans that she persuaded Shirley Edinberg to falsely claim that Allen exposed himself to her;[17] (ii) testimony from Evans that when she asked Moore if Allen exposed himself to her, Moore said it never happened; and (iii) testimony from Casanova that Moore admitted to him that her allegations about Allen were false and that she said "the bitch [referring to herself] is gonna get paid."[18] (Def.'s Reply at 6.)

The fake bomb evidence is more than propensity evidence—it supports the District's theory that Moore had a scheme to defraud her employer with a false harassment and retaliation

---

[17]The District clearly intends to introduce this evidence for the truth of the matter asserted. If Evans is able to testify regarding a conversation she had with Moore, as the District described in its motion, (Mot. ¶3), the conversation is admissible as a party admission. However, Evans' affidavit, which was attached to the motion to compel, describes a conversation Evans had with *Edinberg*, not Moore, about Edinberg's conversation with Moore. (Mot., Ex. B ¶ 2.) If Evans had the conversation with Edinburg, then to avoid hearsay problems, Edinburg, not Evans, would have to testify regarding Edinburg and Moore's conversation.

The District also intends to have Evans testify that Moore told Edinberg "we're going to get paid." Again, if the District wants this evidence admitted for the truth, which seems evident, Evans is not the proper witness.

[18]In its reply in support of its motion, the District explained that Allen would also testify that Moore told him she sued the Board of Education for sexual harassment and received money in settlement. Although Allen testified regarding this conversation during his deposition, the deposition further revealed that Moore's purported statement was not true—she has never sued anyone for sexual harassment prior to this lawsuit. (Mot., Ex. A 38:4-40:17.) This evidence is therefore not admissible in support of the District's theory that Moore was engaged in a plan to defraud the District.

claim. Accordingly, the first test is satisfied. The act is also close enough in time and similar enough to the other acts to satisfy the second test. Although convincing someone to make and plant a fake bomb is an act that goes a step further than making up false claims, the test requires only that the acts be similar, not identical. Moreover, Moore raised no arguments challenging the similarity or the timing.[19] The third test is likewise satisfied. If the jury finds Casanova more credible than Moore, they could believe that Moore planned the fake bomb incident.

That leaves the fourth test: whether the prejudicial effect of the fake bomb evidence substantially outweighs the probative value. Balancing the probative value against the prejudicial value is a discretionary decision. *Compare Gastineau*, 137 F. 3d at 495 (affirming trial court's decision to admit 404(b) evidence) *with Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 776-777 (7th Cir. 2001) (affirming trial court's decision to exclude 404(b) evidence). Here, although the decision is a close call, the court will allow the District to introduce certain evidence relating to the fake bomb incident. Implicating Moore in a false bomb threat is prejudicial, but the evidence is also highly probative of the District's theory that Moore was carrying out a plan to defraud her employer with false claims in pursuit of financial gain. Moore argues that even if she did instigate the fake bomb incident (which she denies), it does not necessarily follow that her sexual harassment claim is false. But in making this argument, Moore ignores the District's other evidence—*e.g.*, that she admitted that her harassment allegations against Allen were untrue. Further, the law does not require "that there be no prejudicial effect, only that the prejudice not

_____

[19]In an attempt to distinguish *Gastineau*, Moore makes the conclusory argument that in her case, "there is no pattern or common scheme, and the evidence is not even probative of motive." (Pl.'s Consol. Resp. at 5.) The court disagrees. There is sufficient evidence from which the jury could conclude that Moore was engaged in a plan to pursue a fraudulent claim.

be unfair." *Gastineau*, 137 F. 3d at 495. In this case, excluding the evidence presents a greater danger of unfair prejudice than admitting it. The District should be allowed to present its theory without diluting it. Admitting the evidence will not unfairly affect a jury's ability to objectively assess the evidence, make credibility determinations, and reach a verdict. Because the probative value of the fake bomb evidence is not substantially outweighed by the danger of unfair prejudice, the evidence passes the test for admissibility under Rule 404(b).

However, the court is mindful of the need to prevent the trial to devolve into a trial within a trial on the fake bomb incident. The court will allow Casanova, Dr. Gonzalez (Moore's treating psychologist,) and Dr. Rossiter (a psychiatrist the District hired to evaluate Dr. Gonzalez) to testify as to any statements Moore made to them regarding the fake bomb incident. The court excludes under Rule 403 any reference to the state charge pending against Moore, testimony from the investigating officers, and reports stemming from the investigation into the fake bomb incident.

There is one final issue. Despite the District's argument to the contrary, the fake bomb incident has no bearing on Moore's damages for emotional distress. According to the District, its ability to defend against Moore's claim for emotional distress and damages will be severely prejudiced if the fake bomb evidence is excluded because the fake bomb incident "is a component of her emotional distress." (Mot. ¶ 17). The District therefore must be allowed to submit evidence to show that Moore's claims of emotional distress are false, either in whole or in part. In support of its argument, the District explains that Moore testified that the fake bomb incident had a significant effect on her emotional well-being, and that she had to take two months off of work because she was afraid for her life and afraid to return to work. Further, the fake

21

bomb incident was a factor in professional evaluations of Moore by both Dr. Gonzalez and Dr. Rossiter.[20] Accordingly, the District contends it must be allowed to show that Moore is fabricating her emotional distress claims, at least in part.

This argument misses a fundamental point, however: Moore has no legal basis to recover damages for emotional distress relating to the fake bomb incident. Assuming *arguendo* that Moore can establish liability for sexual harassment or retaliation, her damages cannot be based on the effect the fake bomb incident had on her emotional health. It is undisputed that Casanova planted the fake bomb. Casanova was not a District employee. Thus, even if Moore were emotionally damaged by the fake bomb incident, there is no causal connection between the District and her damage. The District faces no liability for damages relating to the fake bomb incident, which means the fake bomb evidence is not relevant to Moore's damages claim.

As explained above, the District's motion in limine to admit the fake bomb evidence under Rule 404(b) is granted.

ENTERED:

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge

Dated: November 19, 2004

---

[20]For example, Dr. Gonzalez's treatment notes indicate that Moore was overwhelmed with fright due to the incident.