

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NESHAWN MOORE )
            **Plaintiff,** )
             )
             )    **Case No. 02 C 4040**
             )
**METROPOLITAN WATER RECLAMATION** )    **Magistrate Judge Nan R. Nolan**
**DISTRICT OF GREATER CHICAGO** )
**a unit of local government,** )
            **Defendant.** )
             )

## MEMORANDUM OPINION & ORDER

Plaintiff Neshawn Moore sued her employer Metropolitan Water Reclamation District of

Greater Chicago ("the District") for sexual harassment and retaliation in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e. The parties consented to the

jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the matter

later went to trial. During trial, at the close of Moore's case in chief, the District filed a motion

for judgment as a matter of law on both claims pursuant to Rule 50(a) of the Federal Rules of

Civil Procedure. The court granted the motion as it related to Moore's retaliation claim,[1] but

took the motion under advisement as it related to her claim that she was subjected to a sexually

hostile work environment, and informed the District that the hostile work environment claim

would be submitted to the jury. The jury subsequently returned a verdict in favor of Moore on

her hostile work environment claim, awarding her $825,000 in compensatory damages and

$60,000 in actual damages. After the jury verdict, the District renewed its motion for judgment

---

[1] As the court noted when issuing its oral ruling, Moore conceded during oral argument
that her retaliation claim was insufficient to go to the jury.

as a matter of law and alternatively asked for a new trial and/or remittitur of damages.[2]

This matter is now before the court for ruling on the District's (1) motion for judgment as a matter of law as it relates to the hostile work environment claim, (2) motion for a new trial, which asserts that the conduct of the trial was unfair to the District and that the verdict was against the clear weight of the evidence, and (3) motion for remittitur of the damage award, or alternatively, for a new trial.[3] For the reasons explained below, the court denies the District's motion for judgment as a matter of law and motion for a new trial, and grants in part and denies in part the District's motion for remittitur of the damage award, or alternatively for a new trial.

## I.    MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50

To prevail on her claim that she was subjected to a sexually hostile work environment, Moore had to establish that "(1) she was subjected to unwelcome sexual advances, requests for

---

[2]Judgment should have been entered on January 28, 2005, the same day that the jury verdict was entered. Due to an inadvertent error, however, judgment was not entered until July 12, 2005. (*See* docket entry 160.) In any event, the District filed its post-trial motion under Rule 50 and 59 on February 4, 2005, (*see* docket entry 120), well within ten days of the date that judgment should have been entered. *See* Fed. R. Civ. P. 50(a) & 59(b).

After the error was corrected and judgment was entered, as a precautionary measure, the District filed a *Motion to Deem Defendant's Memorandum of Law in Support of Post Trial Motions Timely Filed* ("timeliness motion") (docket entry 164), and re-filed its post-trial motions (docket entries 162-163). The District's precautionary motions were not necessary, however, because the timeliness of the District's post-trial motion under Rules 50 and 59 has never been challenged. Accordingly, the court denies the District's timeliness motion as moot. The court also denies the re-filed post-trial motions as moot.

[3]The District actually filed just one motion, entitled *Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for Remittitur of the Damage Award, or for a New Trial.* For ease of discussion and ruling, however, the court has broken the motion down into three motions: (1) the motion for judgment as a matter of law as it relates to the hostile work environment claim, (2) the motion for a new trial alleging that the trial was unfair and the verdict was against the clear weight of the evidence, and (3) the motion for remittitur of the judgment, or alternatively, for a new trial.

sexual favors or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). Although the jury entered a verdict in Moore's favor, the District contends that it is entitled to judgment as a matter of law under Rule 50.

Under Rule 50(b), in the event the court "does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after judgment is entered, as the District did here. *Id.* In ruling on a motion for judgment as a matter of law after a verdict has been entered, the court must limit its analysis to "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed[.]" *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 207 F.3d 938, 941 (7th Cir. 2000) (internal quotation marks and citation omitted). In other words, judgment as a matter of law is appropriate only if the court finds that "no rational jury could have found for the plaintiff." *Id.* In conducting its analysis, the court may not make credibility determinations or weigh contested evidence. *Id.; see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The District makes four arguments in support of its Rule 50(b) motion. The first argument is that all allegations of conduct that occurred before October 15, 2000 are barred by the statute of limitations, and without the pre-limitations conduct, there is insufficient evidence to

3

establish that Moore was subjected to a sexually hostile work environment. In making this argument, the District is effectively asserting that the court erred when it denied defendant's pretrial motion *in limine* to exclude evidence of harassment that occurred prior to October 14, 2000. *See Moore v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 02 C 4040, 2004 WL 2958769, at *1-4 (N.D. Ill. Nov. 22, 2004). The issue the court addressed in ruling on the motion *in limine* was whether the pre-limitations conduct and the conduct that occurred within the limitations period could be viewed as part of the same hostile work environment. *Id.* at *3. The pre-limitations conduct included, among other things, Moore's co-worker Ricky Allen exposing himself to her multiple times between January and August 2000. The conduct within the limitations period included a "betting conversation" between Assistant Chief Operating Engineer Paul Wysocki and engineers Jerry Culhane and Ron Hultgren during which they discussed who would be the first to have oral sex with Moore.[4] The District raises no new arguments on this issue, and the court remains convinced that its ruling on this matter was correct. As anticipated, Moore testified that she reported Allen's harassment to her supervisor, Wysocki, who merely laughed and asked if she had photos, but took no action. As the court previously explained, "[i]f Wysocki was aware of her earlier complaints, and later was an active

---

[4]The District also argued that Moore presented no evidence of harassment within the limitations period because there were no references to sexual harassment during that time frame in her journal, which supposedly contained every incident of sexual harassment she experienced. In other words, because there was no reference to the betting conversation in Moore's journal, the District suggests that the betting conversation must not have happened. The jury, however, disagreed. The jury answered a special interrogatory in which they explicitly found, by a preponderance of the evidence, that "a conversation occurred during which Jerry Culhane, Paul Wysocki, and Ron Hultgren discussed which one of them would be the first to have sex with Neshawn Moore." To reach that decision, the jury had to assess the credibility of various witnesses. In ruling on the motion for judgment as a matter of law, the court cannot re-weigh that contested evidence. *Mathur*, 207 F.3d at 941; *see Reeves*, 530 U.S. at 150.

4

contributor to the problem [through the betting conversation], a reasonable jury could conclude that the conduct during the limitations period 'merely extended the same hostile work environment' that began in the pre-limitations period." *Id.* Accordingly, the court rejects the District's arguments that the pre-limitations conduct should have been barred and that the District is entitled to judgment as a matter of law on that basis.

The District's second argument is that, as a matter of law, Moore was not subjected to a hostile work environment. In making this argument, the District focuses on individual acts of harassment and attempts to explain why each individual act is insufficient to create a hostile work environment. But as the court previously explained to the District in ruling on the motions *in limine*, this argument is flawed: "'Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive.'" *Id.* at *2 (quoting *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000).) Moreover, based on the evidence presented at trial and considering all of that evidence in the light most favorable to Moore, there is no doubt that a rational jury could have found that Moore was subjected to a sexually hostile work environment. *See Mathur*, 207 F.3d at 941. By way of example only, there was evidence that Ricky Allen exposed himself to her on multiple occasions, that Ray Martino, one of Moore's supervisors, approached her from behind, grabbed her by the breasts, and lifted her off the ground as she screamed, that Hultgren offered to write her a letter of recommendation for a promotion if she slept with him, and that Moore was told about a conversation in which Wysocki, Culhane and Hultgren were betting about which of them would be the first to have oral sex with her. The evidence presented was sufficient to

5

support a verdict in Moore's favor.[5]  *Id.*

In its third argument, the District contends that Moore cannot establish the existence of a sexually hostile work environment through alleged acts of harassment experienced by other co-workers.  This argument challenges the court's decision to admit evidence regarding two other District employees, Saleema Ali and Shirley Edenberg.  Moore's claim was not premised solely on harassment experienced by others, however.  Rather, as demonstrated by the evidence listed above, there was ample evidence of harassment personally experienced by Moore.  Accordingly, the admission of evidence regarding Saleema Ali's and Shirley Edenberg's experiences is not grounds for judgment as a matter of law.  Whether admission of evidence regarding Ali and Edenberg is grounds for a new trial is separate matter, discussed in section II below.

In its final argument, the District argues that Moore's claim fails as a matter of law

---

[5]Without citing any case law, the District additionally argues that Moore's rebuttal evidence (discussed further below in section II) cannot be considered in evaluating the motion for judgment as a matter of law because the District moved for judgment at the close of Moore's case in chief.  In other words, the District contends that because it moved for judgment as a matter of law at the close of Moore's case in chief, the court may only consider evidence elicited during the case in chief.  The District's argument is misplaced.  In fact, because the court took part of the Rule 50(a) motion under advisement and informed the District that the case would go to the jury on the hostile work environment claim, as a procedural matter, the District should have renewed its motion for judgment as a matter of law at the close of all the evidence in order to properly preserve its arguments for its post-trial Rule 50(b) motion.  "The language of Rule 50 suggests that only a motion for [judgment as a matter of law] that is made at the close of all the evidence may be renewed post trial."  *Laborers' Pension Fund v. A & C Environ., Inc.*, 301 F.3d 768, 775 (7th Cir. 2002).  "The purpose of requiring that the motion be made after the submission of all the evidence, but before the case is given to the jury, is to afford the opposing party an opportunity to cure any defect in its case before the jury retires."  *Id.*  Failure to renew a motion for judgment as a matter of law at the close of the evidence generally precludes a party from renewing its motion after trial.  *Id.*  Here, the court finds it unnecessary to decide whether the District's post-trial motion for judgment as a matter of law should be precluded (an issue neither party addressed) because, in any event, the motion fails on the merits.

6

because there is no basis for employer liability. As the Supreme Court established in *Ellerth*[6] and *Faragher*,[7] under Title VII, an "employer is essentially strictly liable if the employee's supervisor created the hostile work environment." *Mason*, 233 F.3d at 1043; *Cerros v. Steel Tech., Inc.*, 398 F.3d 944, 951 (7th Cir. 2005). The only qualification to the strict liability rule is that when, as in Moore's case, the plaintiff does not suffer a tangible adverse employment action, the employer may defeat vicarious liability if it successfully establishes an affirmative defense by showing "'(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Cerros*, 398 F.3d at 951-952 (quoting *Ellerth*, 524 U.S. at 765). Where the hostile work environment is created by the employee's coworkers, the employer is liable "when the employee shows that his employer has 'been negligent either in discovering or remedying the harassment.'" *Mason*, 233 F.3d at 1043. Unless the employer has knowledge of the co-workers' harassing conduct, "the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII." *Rhodes*, 359 F.3d at 507. Here, the jury found the District liable for both supervisor and co-worker misconduct. In seeking judgment as a matter of law, the District argues that it exercised reasonable care to prevent sexual harassment and that Moore failed to take advantage of corrective opportunities the District made available to avoid harm. The court cannot agree, however, because a rational jury could have found a basis for employer liability based on the evidence presented. *Mathur*, 207 F.3d at 941.

---

[6]*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

[7]*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

7

According to the District, it had an adequate anti-harassment policy in place, and the "facts show that when [Moore] did make a proper complaint, there was a reasonable investigation." (Def.'s Mot. J. as a Matter of Law at 8.)[8] Relying heavily on the fact that Moore did not complain to Frances Wilkins—the District's assistant director of personnel and Equal Employment Opportunity ("EEO") officer—until July 30, 2001, nearly a year after Ricky Allen last exposed himself to Moore, the District contends that the District conducted a reasonable investigation. The flaw in the District's argument is that it takes a narrow, selective view of the evidence elicited at trial.

At trial, there was evidence that in January 2000 when the problem with Allen began, Moore informed her supervisor, Wysocki, that Allen had exposed himself to her, yet Wysocki took no action in response to her complaint, and the incidents with Allen continued. There was further testimony that when Moore reported other incidents of sexual harassment to Wysocki (see sections II.A.5 infra), although Wysocki told the offender to "cut it out," he told Moore that she would have to learn to deal with such behavior—a response that a jury could find was not reasonably calculated to prevent future harassment. Additionally, there was evidence that in addition to tolerating sexual harassment by others, Wysocki contributed to the sexually hostile work environment by engaging in the betting conversation. Moreover, Moore testified that when she eventually complained to Wilkins, she was sent to an intimidating meeting with Wysocki, Kersi Choksey, and Oliver Plunkett during which Plunkett told her not to go "downtown" to the EEO officer with complaints. (R. 890:7-892:11.) Wilkins further admitted that she did not personally investigate Moore's complaints until February 2002, after Moore complained to her a

---

[8]See docket entry 113.

8

second time.[9] The evidence thus showed when Moore reported sexual harassment to her supervisor, he failed to take action, that when she reported sexual harassment to the EEO officer, she was sent to an intimidating meeting that involved the supervisor who had previously ignored her complaint, and that the EEO officer delayed investigating her complaint for nearly seven months. Based on the evidence, a rational jury could conclude that Moore informed her employer about the sexual harassment, and that the District failed to respond in a manner that was reasonably calculated to prevent and correct the harassing behavior—a conclusion sufficient to impose employer liability for both supervisor and co-worker harassment.

Finding no basis to overturn the jury's verdict, the court therefore denies the District's motion for judgment as a matter of law under Rule 50.

## II.    MOTION FOR A NEW TRIAL UNDER RULE 59

The District also filed a motion for a new trial under Rule 59(e). The decision whether to grant a new trial lies within the sound discretion of the trial court, and should be granted only "if the verdict is against the clear weight of the evidence, the damages are excessive, or the trial was unfair to the moving party." *Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997). In sections II.A and II.B, the court addresses the District's contentions that the conduct of the trial was unfair and that the verdict was against the clear weight of the evidence. The District's argument that the damage award is excessive is addressed in section III below.

---

[9]According to Wilkins, she did not personally investigate sooner because after Moore's meeting with Plunkett, Wysocki and Choksey, Moore had indicated that she was satisfied and that no further action needed to be taken. Wilkins' notes fail to corroborate her testimony, however, and Moore flatly denied ever stating that she was satisfied with the way the District handled her complaint. It was up to the jury to weigh the credibility of the witnesses' testimony and determine who to believe.

### A. The District Received a Fair Trial

Based on fourteen evidentiary rulings the District believes were erroneous, the District argues that the conduct of the trial was so unfair to the District that a new trial is warranted. Because the District alleges judicial errors in admitting or rejecting evidence, the court considers the District's Rule 59 motion in conjunction with Rule 61, which provides: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order . . . is a ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice." *Grove Holding Corp. v. First Wisconsin Nat'l Bank of Sheboygan*, 12 F. Supp. 2d 885, 896 (E.D. Wis. 1998) (citation omitted); *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 621 (7th Cir. 2003) (error is harmless unless it had a "'substantial and injurious effect or influence' on the jury's verdict"). As the Supreme Court has long held, a party "'is entitled to a fair trial, but not a perfect one,' for there are no perfect trials." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (citation omitted). As explained in detail below, the court concludes that the District received a fair trial, and therefore denies the motion for a new trial to the extent it is based on purported judicial errors.

### 1. Admission of Prelimitations Conduct

The District first argues that the trial was unfair because the court admitted evidence regarding incidents of harassment that occurred before October 15, 2000. The court has already rejected this argument in ruling on the District's motion *in limine*, and again in ruling on the motion for judgment as a matter of law. For the same reasons explained above in section I, the court stands by its decision to admit evidence of pre-limitations conduct under a continuing violation theory. Because the court remains convinced that admission of the evidence was

10

proper, there is no grounds for a new trial.

### 2. Admission of Rebuttal Evidence Regarding Harassment by Hultgren

The District also contends that the court erred in allowing Moore to offer rebuttal

testimony regarding being propositioned for sex by Ron Hultgren. During her case in chief,

Moore testified that Hultgren once offered to write her a recommendation letter for a promotion

in exchange for sex. (R. 859:6-860:6.) She did not establish a time frame for that incident

during her case in chief. But then during rebuttal, based on a May 5, 2002 entry in her diary

where she wrote that she could not work with Hultgren, Moore testified that the reason she could

not work with Hultgren was that he kept propositioning her for sex, continuing into 2002. (R.

1445:17-1446:15.) According to the District, Moore failed to establish that Hultgren's alleged

propositioning of her occurred during the limitations period, and her rebuttal testimony regarding

Hultgren was neither proper rebuttal evidence nor believable. None of these arguments persuade

the court to grant a new trial.

As an initial matter, the timing of the propositions is not the critical matter that the

District makes it out to be. The District is correct that Moore must establish that she experienced

the hostile work environment during the limitations period. However, this is a continuing

violation case. Accordingly, "[p]rovided that an act contributing to the claim occurs within the

filing period, the entire time period of the hostile environment may be considered . . . for

purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117

(2002). And as the District concedes, there was evidence that the betting conversation took place

during the limitations period—*i.e.*, an act contributing to the hostile work environment. In other

words, it was not necessary for Moore to establish that Hultgren's propositioning also occurred

during the limitations period in order to have a viable claim.

In any event, Moore did testify that Hultgren's propositioning continued into 2002. The District argues that Moore's testimony was not credible because her journal stated only that she could not work with Hultgren, not the reason why she felt she could not work with him. The jury was well aware that Moore's journal entry for May 5, 2002 made no reference to Hultgren propositioning her—the District aptly made that point during cross-examination. (*See* R. 1450:17-1451:21.) Moore's credibility was duly challenged, and it was up to the jury, not the court, to decide whether she was credible. Moreover, the jury could have rejected Moore's testimony regarding Hultgren yet still found in her favor on the hostile work environment claim based on the other evidence presented at trial.

The District further argues that the testimony was not proper rebuttal evidence, and should have been offered during the case in chief. "A trial court has considerable discretion in determining the proper scope of rebuttal evidence." *United States v. Goodwin*, 770 F.2d 631, 638 (7th Cir. 1985). The court admitted the evidence to rebut Hultgren's testimony that he never had conversations of a sexual nature with Moore. (R. 1442:16-19.) Although the District contends that Hultgren's testimony was not broad enough to permit Moore's rebuttal testimony, the court disagrees. Moreover, even if the testimony was not proper rebuttal testimony, any error in admitting it was harmless because the District was not prejudiced: the evidence presented in rebuttal could have been admitted during Moore's case in chief, and the District was allowed to present surrebuttal evidence from Hultgren. *Goodwin*, 770 F.2d at 638 (no prejudice where rebuttal evidence could have been presented during case in chief and where surrebuttal evidence was allowed). The admission of rebuttal evidence regarding Hultgren does not warrant a new

12

trial.

### 3. Admission of Evidence Regarding Saleema Ali

The District also maintains that it was unfairly prejudiced by the admission of evidence regarding allegations of sexual harassment raised by Saleema Ali, a maintenance laborer who worked at the District in the same plant as Moore, but on a different shift. The court, however, cannot agree.

Some background information is necessary here. The court originally addressed the issue regarding Ali in ruling on the District's motion *in limine* to exclude evidence regarding Ali's claims. In denying that motion, the court explained that without the context of trial, it could not rule that evidence regarding Ali was "'clearly inadmissible.'" *Moore*, 2004 WL 29858769 at *7. Specifically, the court explained that evidence that Ali was sexually harassed could be relevant to evaluating the totality of the circumstances if Moore knew about Ali's experiences. *Id.* (citing cases); *see Hirase-Doi*, 61 F.3d at 782 ("evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a [hostile work environment] claim"). Additionally, evidence regarding the investigation into Ali's claims by Wilkins, the District's assistant director of personnel and EEO officer, could be "relevant to Moore's theory that Wilkins conducted ineffective investigations into sexual harassment claims." *Moore*, 2004 WL 2958769 at *7. At trial, the District made an oral motion to strike the evidence regarding Saleema Ali because there was no evidence that Moore knew about Ali's experience.[10] (R. 1286:17-22, 1288:10-11.) Agreeing that the record lacked evidence of Moore's knowledge,

---

[10]The District stated that it was not renewing its earlier motion *in limine*, but rather, that its motion to strike was based on Moore's failure to provide the requisite link that she knew about Ali's experience. (R. 1288:10-11.)

13

the court granted the motion to strike in part, ruling that the jury could not consider evidence regarding Ali in assessing whether Moore was subjected to a sexually hostile work environment. However, based on its ruling on the motion *in limine*, the court ruled that Ali's testimony was admissible for the limited purpose of evaluating the reasonableness of the District's responses to complaints of sexual harassment. Accordingly, the court issued a limiting instruction to the jury. (*See generally* R. 1377:18-1379:2, 1508:1-8.)

In moving for a new trial, the District argues that whether the District conducted a reasonable investigation into the Ali matter is irrelevant, and that admission of the evidence was unfairly prejudicial. The law requires employers to respond to complaints of sexual harassment in a manner that is reasonably likely to prevent and promptly correct harassing behavior. *See Cerros*, 398 F.3d at 952 (discussing liability for supervisor and co-worker harassment in cases that involve no tangible adverse employment action). Thus, the District is correct in arguing that an employer need not prove that it successfully prevented sexual harassment, as long as it took reasonable steps to do so. However, an employer's knowledge of harassment directed at employees other than the plaintiff can be relevant to evaluating whether the employer responded to allegations of harassment in a manner that was reasonably likely to prevent future harassment. *United States Equal Employment Opportunity Comm'n v. Caterpillar, Inc.*, No. 03 C 5637, 2004 WL 2092003, at *10 (N.D. Ill. Sept. 13, 2004). Additionally, Moore's theory was that Wilkins, as the District's EEO officer, conducted ineffective investigations in which she ignored well-founded allegations of sexual harassment, and routinely concluded that the harassment allegations she investigated were unfounded. Evidence regarding Wilkins investigation into

14

Ali's complaint was relevant to Moore's theory.[11] The court finds no error in admitting the Ali evidence for its limited purpose, and thus finds no basis to grant a new trial.

### 4. Exclusion of Evidence Regarding Pregnancy Terminations

Additionally, the District contends that it did not receive a fair trial because the court excluded evidence that Moore terminated two pregnancies during the relevant time frame: one in April 2000 and a second in January 2001. In a mid-trial motion *in limine*, plaintiffs asked the court to redact references to the terminated pregnancies from Moore's medical records and to bar evidence relating to the terminated pregnancies. The District sought to admit the evidence because Moore claimed that she was emotionally distressed by the sexual harassment she experienced, so the District wanted to show that there were other reasons for Moore's emotional distress. The court barred the evidence under Federal Rule of Evidence 403, however, finding that the prejudicial value of the evidence substantially outweighed its probative value. (R. 868:11-873:13.) The court stands by its decision to bar the evidence.

As the court explained in its oral ruling, the issue of abortion is a highly volatile issue that many people have strong opinions about. (*See id.*) Because the parties failed to raise the issue earlier, the jury was not questioned about their opinions on abortion during voir dire, leading to a serious concern that the verdict could be tainted by the jurors' views on abortion.[12] Additionally, to refute Moore's damages claim, the District had other evidence regarding events in her life that could have caused her emotional distress (*e.g.*, her boyfriend cheating on her and taking money

---

[11]As the District is well aware, the court excluded Moore's most damaging and direct evidence criticizing Wilkins' investigations into sexual harassment complaints when it barred the report by Callie Baird. *See Moore*, 2004 WL 2958769, at *4.

[12]Indeed, one of the jurors was a nun.

15

from her). Morever, as the court explained, there was no temporal connection between the pregnancy terminations and Moore's referral to a psychiatrist. Accordingly, after careful consideration, the court concluded that the abortion evidence was "just too highly prejudicial." (R. 873:9.) This was the correct decision. "Informing the jury that [Moore] had had an abortion presented the danger of provoking 'the fierce emotional reaction that is engendered in many people when the subject of abortion surfaces in any manner.'" *Nichols v. Am. Nat'l Ins., Co.,* 154 F.3d 875, 885 (8th Cir. 1998) (citation omitted) (finding that trial court abused its discretion when it admitted evidence of plaintiff's abortion); *Jones v. Rent-A-Center,* 281 F.2d 1277, 1284 (D. Kan. 2003) (because evidence of plaintiff's abortion "could have caused the jury to decide the case on an improper basis by making a value judgment regarding plaintiff[,]" court barred evidence).

Because the court finds that its ruling barring evidence of the pregnancy terminations was not erroneous, the ruling does not warrant a new trial. *Jones,* 281 F.2d at 1284.

### 5. Admission of Certain Testimony by Kevin Kane

The District also argues that the admission of certain testimony by Kevin Kane is grounds for a new trial. Moore's counsel asked Kane the following question: "And after this incident, did you yourself of your own personal observation perceive any difference or change or alteration in the atmosphere of the District in terms of the way men treated women?" (R. 370:10-13.) The District objected "as to foundation, relevance, and conclusory," which the court overruled. (R. 370:14-15.) Kane then answered: "Yes, it became open season on the women." (R. 370:18.) The District now argues that the question was irrelevant because whether there was a difference in the way men treated women had no bearing on whether Moore was subjected to a hostile work

environment. This argument is unpersuasive, particularly when the full context of Kane's testimony is considered.

Before the challenged question, Kane had testified that he witnessed Ray Martino, Moore's supervisor, approach her from behind, grab her by the breasts, and lift her off the ground as she screamed. According to Kane, Moore left crying and screaming, while Martino laughed. Moore returned later with Wysocki, who stated to Martino: "fellows, you got to kind of cut this stuff out." When Moore asked, "Is that all you're going to do about this?" Wysocki responded "Boys will be boys and you're going to have to learn to deal with this." Moore then ran out of the room crying. (R. 366:4-368:18.) Kane was then asked the question at issue: whether after the Martino incident, whether he personally observed "any difference or change or alteration in the atmosphere of the District in terms of the way men treated women[.]" He responded, "Yes, it became open season on the women." (R. 370:10-18.)

The District argues that there is no indication from Kane's testimony that the change in atmosphere affected Moore. The court finds this objection disingenuous, given the context of Kane's testimony. For one thing, Kane worked with Moore, so there is no reason to think the "atmosphere" he testified about related to the atmosphere in some other part of the District unrelated to Moore. The District also asserts that question was vague and calls for speculation, specifically complaining that the terms "atmosphere" and how men "treated" women are impermissibly vague and do not support the conclusion that the Moore's work environment was hostile. Notably, the District did not raise either of those objections at trial, and thus waived them. *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 803 (N.D. Ill. 2002) (objection waived unless specific grounds for objection are made at time of ruling); *see Stephens v. Miller*, 13 F.3d

17

998, 1008 n. 5 (7th Cir. 1994) ("An evidentiary rationale not raised before the trial judge at the time of ruling is waived."). In any event, Kane's answer to the question about the change in atmosphere was just one fact among many—part of the totality of the circumstances, but hardly the sole basis, or even the primary basis, for the jury's verdict. Indeed, considering the context of Kane's testimony, his answer to the question about the change in atmosphere was minor compared to his testimony regarding Martino's harassment of Moore and Wysocki's response. The District's challenges to foundation likewise fail to persuade the court, given that the question specifically asked for Kane's observations based on personal knowledge. Regardless, even if the testimony regarding the change in atmosphere should have been excluded, any error in admitting the evidence was harmless.[13]

The District also challenges another portion of Kane's testimony, where Kane testified that after seeing Moore being sexually harassed, he had concerns. Specifically, Kane testified that he was worried for his safety, and reprisals against himself and his children (who worked for the District). (R. 393:12-394:8.) The District argues that Kane's concerns were irrelevant and admission of the testimony was prejudicial to the District. As an initial matter, the District made no relevance objection—the objection was to the leading nature of the question. (R. 393:12-21.) Moreover, even if a relevance objection had been made, the court finds that Kane's concerns

---

[13]To the extent the District suggests that the prejudicial value of the testimony outweighs its probative value under Federal Rule of Evidence 403, the objection is waived because the District did not raise that objection at trial. *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 803 (N.D. Ill. 2002); *see Stephens v. Miller*, 13 F.3d 998, 1008 n. 5 (7th Cir. 1994) ("An evidentiary rationale not raised before the trial judge at the time of ruling is waived."). In any event, the court disagrees that the testimony should have been excluded under Rule 403. Likewise, although the District argues that the challenged testimony was improper opinion testimony, the District waived the objection by failing to raise it at trial. *Niebur*, 212 F. Supp. 2d at 803.

provided sufficiently relevant background information. Kane testified that because of his concerns, he requested a private meeting with Larry Hill at the District. According to Kane, that private meeting turned out to be a meeting not just with Hill, but with Kersi Choksey, Paul Wysocki, and Oliver Plunkett, during which the Martino incident was discussed and Plunkett ended up screaming at Kane that "I don't care what you saw, what you think you saw, I'm going to stand up for my men," meaning Martino and Wysocki. (R. 394:20-396:10.) Admission of Kane's concerns thus provided context for his meeting with the supervisors. Admission of the evidence was not erroneous, and even if it were, any error was harmless. There are no grounds for a new trial based on Kane's testimony.

### 6. Admission of Evidence Regarding Consensual Sex Between Allen and Evans

In seeking a new trial, the District further maintains that the court should not have allowed Moore to testify that she observed Ricky Allen and Sophia Evans engaging in oral sex in the women's locker room at work. The court previously addressed this issue when it denied the District's motion *in limine*. *See Moore v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 02 C 4040, 2004 WL 2898042, at *1 (N.D. Ill. Dec. 13, 2004) (granting Moore's motion for reconsideration, and denying the District's motion *in limine* to exclude testimony regarding consensual sex act between Evans and Allen). As the court explained, the locker room incident is not actionable as sexual harassment because it is the type of conduct that reasonable men and women would find offensive in the workplace, so it does not constitute harassment based on sex. *Id.* at *1. Nevertheless, evidence regarding the locker room incident was relevant, both because it was part of the totality of the circumstances and because it was relevant to Moore's claim that

19

the District failed to adequately respond to complaints about sexual harassment. *Id.* at *2. Moore testified that she reported the incident to Wysocki, who laughed and asked if she had pictures, but otherwise took no action. (R. 885:23-888:2.) Such evidence is probative of Wysocki's attitude regarding complaints of sexual misconduct in the workplace, whether or not the misconduct was actionable sexual harassment. The court therefore stands by its ruling that evidence regarding the locker room incident was relevant, and that the probative value was not substantially outweighed by the prejudicial value.[14] *Moore*, 2004 WL 2898042, at *2. Because there was no error in admitting the evidence, there is no basis for granting a new trial.

The District also suggests that even if the evidence was properly admitted as part of the totality of the circumstances but not as actionable sexual harassment, then a limiting instruction should have been given. The District, however, never requested a limiting instruction at trial, and thus has forfeited that argument. *United States v. Suggs*, 374 F.3d 508, 517 (7th Cir. 2004). Accordingly, the court denies the motion for a new trial to the extent it is based on admission of evidence regarding the locker room incident.

---

[14]In denying the motion *in limine*, the court cited *Williams v. City of Chicago*, 325 F. Supp. 2d 867 (N.D. Ill. 2004). *Moore*, 2004 WL 2898042, at *2. In *Williams*, the court considered evidence of pornography in evaluating the plaintiff's hostile work environment claim, even though the "mere presence of pornography in the workplace affects everyone 'regardless of sex.'" 325 F. Supp. 2d at 876. There was evidence of other conduct targeted directly at the plaintiff, and the court reasoned that the pornography should also be considered as contributing to her hostile work environment claim "because a hostile work environment is determined by the totality of the circumstances." *Id.* The District contends that *Williams* is distinguishable because the case involved more than claims of pornography in the workplace, it involved conduct directed at the plaintiff because of her sex. The District's attempt to distinguish *Williams* not only fails, it demonstrates why *Williams* is analogous to the case at bar. Just as *Williams* involved more than pornography in the workplace, Moore's case involved more than witnessing co-workers engaged in sexual activity at work—there was ample evidence of sexually harassing conduct directed at Moore.

### 7. Admission of Evidence Regarding Shirley Edenberg

The District next contends that testimony and documentary evidence regarding Shirley Edenberg's claims of sexual harassment should not have been admitted, and that admission of the evidence warrants a new trial because the District was prejudiced. As explained below, the District's request for a new trial based on the admission of evidence regarding Shirley Edenberg is denied.

As the court explained in denying the District's motion *in limine* regarding Saleema Ali,[15] evidence that Moore's co-workers were sexually harassed is relevant to evaluating the totality of the circumstances, provided Moore knew about the co-workers' experiences. *Moore*, 2004 WL 2958769 at *7 (citing cases); *see Hirase-Doi v. U.S. West Communications*, 61 F.3d 777, 782 (10th Cir. 1995) ("evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a [hostile work environment] claim"). The District now argues that evidence regarding Shirley Edenberg's claims that Ricky Allen exposed himself to her on several occasions should not have been admitted because there was no indication from the testimony at trial that Moore was aware of Edenberg's claims.

As an initial matter, the District should have raised this objection at trial, but did not. After the close of plaintiff's evidence, the District moved to strike the evidence regarding Saleema Ali because there was no evidence that Moore knew about Ali's experience. Significantly, the District made no similar motion regarding Edenberg. As explained in section II.A.3 above, although the court found the Ali evidence admissible for a limited purpose, the court granted the motion to strike in part, and issued a limiting instruction, informing the jury

---

[15]The District did not file a similar motion *in limine* regarding Shirley Edenberg.

that they could consider Ali's testimony in evaluating the District's response to complaints of sexual harassment, but should not consider evidence regarding Ali in assessing whether Moore was subjected to a sexually hostile work environment. (R. 1377:18-1379:2, 1508:1-8.) If the District had made a similar motion to strike relating to Edenberg, the court could have evaluated whether there was evidence that Moore knew about Edenberg's experience with Allen and ruled accordingly. By failing to alert the court to the issue during trial, however, the District has waived any claim of prejudice. *See Niebur*, 212 F. Supp. 2d at 803; *see also Stephens*, 13 F.3d at 1008 n. 5. Furthermore, there is, in fact, evidence in the record indicating that Moore knew about Edenberg's experiences: both Edenberg and Moore testified that Edenberg told Moore about the incidents with Allen. (R. 620:9-17, 957:11-16.) Accordingly, evidence regarding Edenberg's claims that Allen exposed himself to her was properly admitted as part of the totality of circumstances. *Moore*, 2004 WL 2958769 at *7 (citing cases); *see Hirase-Doi*, 61 F.3d at 782.

The District also argues that it was improper to allow questions regarding Wilkins' investigation into Edenberg's claims because any investigation into Edenberg's claims was irrelevant and prejudicial. The court cannot agree. Wilkins interviewed Edenberg as part of her investigation into *Moore's* sexual harassment complaint. (R. 782:23-783:10.) During the interview, when asked whether she knew anything about sexual harassment at the District's Stickney plant, Edenberg informed Wilkins that Allen had exposed himself to her on more than one occasion in the past. Evidence regarding Wilkins' investigation into Edenberg's claims was relevant because it was part and parcel of her investigation into Moore's sexual harassment complaint.

22

Because there was evidence that Moore knew about Allen's harassment of Edenberg, and because Wilkins investigated Edenberg's claims as part of her investigation into Moore's claims, the evidence was relevant and properly admitted. Finding no error, the court consequently finds no basis to grant a new trial based on the admission of evidence regarding Edenberg.

### 8. Admission of Certain Testimony by Frances Wilkins

Regarding the testimony of Frances Wilkins, the District's assistant director of personnel and EEO officer, the District takes issue with a few areas of her testimony. None of the District's challenges persuade the court to grant a new trial, however.

The District first argues that the court erred by allowing Moore's counsel to ask Wilkins whether the District's sexual harassment policy had an anti-retaliation provision and whether it provided for zero tolerance. Regarding the question about the anti-retaliation provision, the District never objected to the question at trial, (*see* R. 688:5-20), and thus has waived its challenge. *Niebur*, 212 F. Supp. 2d at 803; *see Stephens*, 13 F.3d at 1008 n. 5. As for the question regarding the zero-tolerance provision, the District objected to the relevance of the question, which the court overruled, allowing the question for background on the policies. The District is correct that the law does not require sexual harassment policies to contain a zero tolerance provision, but that does not render the question irrelevant, let alone so prejudicial that a new trial is warranted. The District's argument is rejected.

The District also argues that Moore should not have been allowed to examine Wilkins regarding the scope of her investigation into Ali's and Edenberg's claims. The court has previously explained why this argument is unpersuasive (*see* sections II.A.3 and II.A.7 above), and thus declines to address it further.

Additionally, the District contends that the court erred in allowing questions suggesting that Wilkins failed to find that harassment occurred because such findings would reflect poorly on Wilkins. Plaintiff's counsel asked: "If there was—if sexual harassment was prevalent [at the District], if it occurred frequently, if it was discovered that it was engaged in regularly by supervisors, that would not reflect well on you, would it?" Over the District's objection that the question was hypothetical, Wilkins answered: "It would not reflect on me. It would reflect on the individuals involved." (R. 804:2-16.) Plaintiff's counsel was attempting to elicit that Wilkins was biased against finding sexual harassment complaints. It was up to the jury to evaluate whether counsel successfully demonstrated a bias. Allowing the question was not erroneous, and even if it were, any error was harmless.

### 9. Admission of Certain Testimony by Moore

The District also argues that certain testimony by Moore should have been excluded. The first challenge relates to testimony regarding a conversation Moore had with Evans in the locker room at work. When plaintiff's counsel asked what was said during the conversation, the District objected on hearsay grounds. (R. 842:23-25.) To overcome the hearsay objection, plaintiff's counsel represented that the conversation was not being admitted for the truth of the matter asserted, but rather, to demonstrate Moore's state of mind. (R. 843:3-12.) After the court overruled the hearsay objection, Moore testified that Evans "wanted to know why I would be making accusations like this because I know that she is dating Ricky Allen[,]" and that Moore walked away without responding to Evans. (R. 843:14-23.) Although plaintiff's counsel represented that the testimony would demonstrate Moore's state of mind, the only statement offered was a statement by *Evans*, which cannot demonstrate *Moore's* state of mind: the hearsay

24

exception for state of mind applies where the statement demonstrates the *declarant's* then

existing mental state. Fed. R. Evid. 803(3). The testimony was erroneously admitted.[16] The

error, however, was harmless. The District is entitled to a fair trial, not a perfect one.

*McDonough Power Equip., Inc.,* 464 U.S. at 553. In light of the substantial evidence elicited at

trial supporting the jury's verdict, the District would be hard pressed to argue that Evan's hearsay

statement had a "'substantial and injurious effect or influence' on the jury's verdict." *Young,* 327

F.3d at 621. Indeed, the District does not even contend that it was prejudiced by the admission of

Evan's hearsay statement.

In its other challenge, the District maintains that it was erroneously prevented from

impeaching Moore. Moore testified on direct examination, and again during cross examination,

that Hultgren offered to write her a letter of recommendation for a promotion to engineer if she

had sex with him. (R. 859:6-860:6; 955:6-20.) During cross-examination, the District showed

Moore her previous deposition testimony and asked:

> Q: All right. In response to the question, " . . .anything else? . . ." The answer is,
> ". . . there is an incident on January the 14th of 2000. Ron [Hultgren] called me
> into the office and asked me to take the readings, once I returned he wants to
> know if I plan on becoming an engineer and that he think write a letter for me to
> get — I guess to get promoted if I sleep with him . . ." Did you make that
> answer?
> A. Yes, I did.

(R. 956:7-18.) Moore's counsel objected, contending that the deposition testimony was not

impeaching. The court agreed, and ruled that the deposition testimony was not impeaching, but

---

[16]In her opposition brief, Moore now argues that the testimony was properly admitted to demonstrate *Evans'* state of mind. But because that was not the reason offered for admission of the evidence at trial, the court declines to address it. *See Stephens,* 13 F.3d at 1008 n. 5 (A party "cannot advance one reason for admitting evidence during trial and then advance a wholly separate basis for admission in post-trial submissions . . . .").

nevertheless allowed the record to stand.[17] (R. 956:23-957:1.) The court stands by its ruling that the testimony was not impeaching, but in any event, the jury heard the deposition testimony for whatever it was worth. The District's perfunctory claim of prejudice rings hollow, and does not present a basis for a new trial.

### 10. Admission of Moore's Testimony Regarding Being Stopped by Police

The District next objects that a new trial is warranted because Moore was allowed to testify that she was frequently stopped by the District's police force as she entered or exited the plant and asked which officer she thought was more handsome, who she would rather date if she had to choose, etc. (*See* R. 878:4-882:4.) The District objected as to relevance and on hearsay grounds, and now contends that allowing the testimony unfairly prejudiced the District's case. The court disagrees. According to the District, the District police officers' conduct was not sexually harassing, not connected to sexually harassing conduct, was limited in nature and duration, and Moore never made a complaint about it. But it makes no difference whether the stops, considered alone, constitute sexual harassment—the police stops were part of the totality of circumstances that Moore experienced, and thus were relevant.[18] *See Mason*, 233 F.3d at 1045

---

[17]The court stated: "All right, I don't think that is impeaching. I don't think that [deposition testimony] is clearly different than [the testimony] is here. So I'll make that legal ruling and we'll just let the record stand." (R. 956:23-957:1.)

[18]The District's reliance on *Cowan v. Prudential Insurance Co.*, 141 F.3d 751, 758 (7th Cir. 1998) for the proposition that "[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage" is unpersuasive. In *Cowan*, the Seventh Circuit affirmed summary judgment in favor of the defendant because the incidents that were sexual in nature were fairly sporadic, were not severe, and only two of the incidents were directed at the plaintiff. *Id.* at 758. Moore's case, in contrast, involved more than sporadic, fairly benign sexual comments, and involved numerous incidents that were directed at Moore personally.

(hostile work environment is assessed based on totality of the circumstances); *Williams*, 325 F. Supp. 2d at 876 (same). Further, the District's contention that Moore never made a complaint about the police stops is incorrect. Moore testified that she reported the problem to Wysocki, that Wysocki said he would take care of it, and that the police stops were not as frequent after she spoke to Wysocki. (R. 881:10-882:6.) In any event, even if court agreed that the testimony should not have been admitted (which it does not), the testimony is not prejudicial. The inference from Moore's testimony (which Wysocki's testimony later corroborated) is that when she complained about the police stops, Wysocki took action to end the problem—an inference which is favorable to the District. The court thus concludes that the testimony regarding the police stops was not erroneously admitted, and even if it were, any error was harmless.

## 11. Admission of Certain Testimony by Oliver Plunkett

The District further contends that it should be granted a new trial based on two questions posed to Oliver Plunkett, a chief operating engineer at the District, during cross examination. The District challenges the following question and answer:

> Q: If Neshawn Moore was reporting [to] Mr. Wysocki that she is being stopped too much by the District police for routine checks of her trunk and then they're coming up to her and saying which one of us officers do you think is attractive and would you go out with one of us, would that be violative of your sexual harassment policy?
> A: If the employee felt harassed and the employee complained about it, yes.

(R. 1097:22-1098:4.) Given that the only trial objection was that the question called for an opinion, the court need not address the District's post-trial challenges that the question calls for a legal conclusion, lacks foundation, and is not relevant. Objections not raised at trial are waived. *Niebur*, 212 F. Supp. 2d at 803; *see Stephens*, 13 F.3d at 1008 n. 5. Regarding the objection that

the question calls for an opinion, the court overruled the objection at trial because Plunkett was one of the supervisors at the plant. (R. 1097:6-17.) The import of the court's explanation was that as a supervisor who had testified regarding his familiarity with the District's sexual harassment policy and the requirements of the policy, the court found that Plunkett had a sufficient basis to have an opinion on the matter. Rule 701 of the Federal Rules of Evidence allows for opinion testimony by lay witnesses provided that any testimony based on opinions or inferences is rationally based on the witness' perception, is helpful to a clear understanding of the witness' testimony or to determining a fact in issue, and is not based on specialized knowledge that falls within the scope of Rule 702. Fed. R. Evid. 701. Plunkett's answer was not testimony based on scientific, technical or other specialized knowledge, so it was not Rule 702 testimony. Further, the court finds that his answer was rationally based on his knowledge of the District's sexual harassment policy and was sufficiently helpful to be admissible under Rule 701.

The District also challenges the following excerpt from Plunkett's cross-examination involving a question about the incident between Ray Martino and Moore (described above in section II.A.5):

> Q: If that event had happened and Mr. Wysocki said to Neshawn, "boys will be boys, learn to live with it," right after this fellow had picked her up off the floor, would that be [an] inappropriate response from a supervisor working under your direction?
> MR. ABRAHAM: Objection, your Honor. This is irrelevant, calling for a conclusion.
> THE COURT: Well, it's based upon testimony. I mean, there is testimony in the record that that is what happened. You folks dispute it, but I think that [plaintiff's counsel] can ask [Mr. Plunkett]. That is in the record, so I'm overruling the objection.
> BY MR. DE ROSE:
> Q: Would that be an inappropriate response from your supervisor?
> A: Yes, but Paul Wysocki would never make such a comment.

(R.1118:22-1119:13.) As with the other challenged question, the court shall only address the objections that were raised at trial, *i.e.*, whether the question was relevant, and whether it called for a conclusion. Whether a supervisor responds appropriately to complaints of sexual harassment is relevant to whether there is a basis for employer liability. *See McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996) (employer's failure to investigate a charge of sexual misconduct may provide basis for employer liability under Title VII for failing "to exercise due care to prevent sexual harassment"). The District's relevance objection thus lacks merit.

The District's other trial objection was that the question calls for a conclusion. In its post-trial briefs, however, the District argues that the question calls for a legal conclusion, which is a different objection than the objection raised at trial. The District's trial objection indicated that the question called for a conclusory answer—*i.e.*, an answer not based on sufficient supporting facts—as opposed to a legal conclusion. Any objection that the question called for a legal conclusion has been waived. *Niebur*, 212 F. Supp. 2d at 803; *see Stephens*, 13 F.3d at 1008 n. 5. In any event, the challenged question neither called for a conclusory answer nor a legal conclusion. As the court explained at trial, there were sufficient facts in the record to provide a factual basis for the question, so the question did not call for a conclusion without factual support. Nor did the question call for a legal conclusion. Plunkett was not asked whether Moore was subjected to a sexually hostile work environment, he was asked whether he considered Wysocki's response to be appropriate.

Because Plunkett's challenged testimony was not erroneously admitted, admission of his testimony does not provide grounds for a new trial.

### 12. Admission of Tape Recording of Dr. Rossiter's Examination of Moore

Additionally, the District argues that Moore should not have been allowed to play a tape recording from her session with Dr. Rossiter, the psychiatrist the District engaged to evaluate Moore in preparation for trial. When Moore's counsel went to play the tape at trial during Dr. Rossiter's cross-examination, counsel for the District objected because the tape recording was not listed as an exhibit in the Final Pretrial Order. Moore's counsel explained that the tape recording was being offered to demonstrate Moore's demeanor and attitude during the session in order to impeach Dr. Rossiter's testimony that Moore was uncooperative, difficult and unreasonable when they met. Because the tape was being offered for impeachment purposes, the court ruled that it could be played. *See* Fed. R. Civ. P. 26(a)(1, 3) (exhibits used solely for impeachment need not be disclosed prior to trial). The court further explained that because the District had a copy of the tape, the tape was not an unfair surprise. (R. 1188:19-21.) The District now urges that a new trial should be granted because the tape recording was not impeaching and because the District was unfairly surprised by the use of an exhibit that was not listed in the Final Pretrial order. The court disagrees, finding that the admission of the tape does not warrant a new trial.

Regarding whether the tape recording actually impeached Dr. Rossiter's testimony, the court is unable to express an opinion because the tape recording was not transcribed in the trial transcript. However, even assuming the tape recording was not impeaching, the court finds that any error in admitting the tape was harmless. The District claims that it was prejudiced because it had no time "to review the tape recording to determine whether it was taken out of context or whether other portions of the tape may have provided clarification." (Def.'s Mem. Supp. Mot.

for J. as a Matter of Law or for a New Trial at 23.)[19]  This argument is unpersuasive because the

District has not come forward with any facts demonstrating that the tape was, in fact, taken out of

context, or was otherwise unfairly prejudicial.[20]  There is no basis for a new trial based on

admission of the tape.

### 13.  Admission of Certain Testimony Regarding David Casanova

The District also argues for a new trial based on certain testimony elicited during the

cross examination of David Casanova, Moore's former boyfriend and a witness for the District,

who testified that Moore asked him to plant a fake bomb on her car so that the District would

take her complaints seriously.  On direct examination, Casanova testified that he had two felony

convictions, one for which he received 18 months probation and the other for which he served

one year in prison.  During cross examination, Moore's counsel was permitted to inquire as to

whether Casanova violated his probation for the first conviction.  At trial, the District objected on

relevance grounds, which the court overruled.  The District now argues that allowing questions

regarding a violation of probation violated Rule 609 of the Federal Rules of Evidence.  (Under

Rule 609, a witness' credibility may be attacked with evidence that the witness has been

---

[19]*See* docket entry 128.

[20]Relying on *United States v. Cutler*, 676 F.2d 1245, 1249 (9th Cir. 1982), the District
argues that Moore failed to give Dr. Rossiter an opportunity to explain the alleged inconsistency,
and thus failed to lay the required foundation.  This argument is misplaced.  *Cutler* involved
exclusion of extrinsic evidence of a witness' prior inconsistent statement under Rule 613(b) of
the Federal Rules of Evidence because the witness was not "afforded the opportunity to explain
or deny" the statement as required for admission.  Here, because the tape recording was not a
prior inconsistent statement, Rule 613(b) is inapplicable.  Further, evidence need not be a prior
inconsistent statement in order to be impeaching.  *See* Christopher B. Mueller & Laird C.
Kirkpatrick, *Federal Evidence* §257 (2d ed. 1994) (recognized methods of impeachment include
contradicting the witness by introducing independent evidence).

convicted of a crime punishable by imprisonment of more than one year, or a crime involving dishonesty or false statement.) The District never raised that objection at trial, however, and thus waived any objection under Rule 609. *Niebur*, 212 F. Supp. 2d at 803; *see Stephens*, 13 F.3d at 1008 n. 5.

### 14. Admission of Moore's Journals Without Redaction

The final evidentiary ruling challenged by the District is the admission of Moore's journals for 2001, 2002 and 2003 in their entirety. In the District's view, entries from eight dates should have been redacted because Moore offered no testimony regarding those specific entries.[21] According to the District, the court erred in denying its request to redact those entries, and in so ruling, prejudiced the District. The court cannot agree.

In the final pretrial order, both parties identified Moore's journals as an exhibit. During the final pretrial conferences, the court gave each side opportunities to make objections to specific journal entries. Because neither the District nor Moore raised any specific objections, the parties and the court proceeded to trial with the understanding that the journals would be admitted into evidence in their entirety. But then, at the end of the trial when the only testimony left before charging the jury was a brief surrebuttal witness, the District raised the issue of redacting the eight entries from Moore's journals. The timing of the District's objection to the eight entries was problematic: Moore's counsel had presented the case based on the understanding that the journals were being admitted in their entirety, so they did not spend time eliciting testimony on every relevant journal entry. Redacting the journals at the end of the trial

---

[21]The eight dates are: 1.28.00, 2.8.00, 2.15.00, 5.17.00, 5.29.00, 8.3.00, 9.20.00 and 5.7.02.

32

would have been unfair to Moore. Accordingly, the court denied the District's objection to the eight entries. The decision was not erroneous—it was the only fair ruling, when considered in context. The District's request for a new trial based on the admission of Moore's unredacted journals is therefore denied.

For the reasons discussed above, the District received a fair trial. The majority of evidentiary errors alleged by the District were not, in fact, errors and in any event, any errors were harmless—both when considered individually and cumulatively. Accordingly, the court denies the District's motion for a new trial to the extent the District claims the trial was not fair.

## B. The Verdict was not Against the Clear Weight of the Evidence

Having found that the District received a fair trial, the court turns to the District's argument that the verdict was against the clear weight of the evidence. "A motion for a new trial based on the sufficiency of the evidence should be granted only if the verdict is against the manifest weight of the evidence." *Lowe v. Consol. Freightways of Delaware, Inc.*, 177 F.3d 640, 641 (7th Cir. 1999) (citation omitted). "The general rule is that a jury verdict is entitled to great deference and should not be overturned '[a]s long as there is a reasonable basis to support it.'" *Boyd v. Vill. of Carol Stream*, 99 C 6514, 2001 WL 641301, at *4 (N.D. Ill. June 1, 2001) (quoting *Robinson v. Burlington N. R.R. Co.*, 131 F.3d 648, 656 (7th Cir. 1997)). Here, to the extent the District claims a new trial is warranted because Moore failed to notify the District regarding the hostile work environment, the court disagrees for the same reasons the court denied judgment as a matter of law on that issue. (*See* section I *supra*.) Although the District contends there is no basis for employer liability, the jury's verdict imposing liability against the District for both supervisor and co-worker misconduct was not against the clear weight of the evidence.

33

The District also argues that the verdict was against the clear weight of the evidence because the testimony of Donald Hicks and Moore was unbelievable and should therefore be disregarded. In employment discrimination cases, credibility is a central, often determinative, issue. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998). When resolution of a claim depends on evaluating witnesses' credibility, "[t]his credibility judgment is best left to the finder of fact." *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995). For that reason, the Seventh Circuit has cautioned that when ruling on a motion to grant a new trial based on the sufficiency of the evidence, a court must be "particularly careful in employment discrimination cases to avoid supplanting [its] view of the credibility of the evidence for that of . . . the jury . . . ." *Riemer v. Ill. Dep't of Transp.*, 148 F.3d 800, 806 (7th Cir. 1998). In this case, credibility was the key issue the jury had to evaluate. At trial, the District presented a starkly different version of the facts than Moore did. The evidence would have supported a verdict for either side, depending on which witnesses were deemed credible. It was up to the jury to make those credibility determinations. Based on the verdict, it is evident that the jury found Moore's version of the facts more credible—a finding which is not against the manifest weight of the evidence. The court thus declines to grant a new trial based on the District's challenges to the sufficiency of the evidence.

## III. MOTION FOR REMITTITUR OF THE DAMAGE AWARD, OR ALTERNATIVELY, FOR A NEW TRIAL

In its final request for post-trial relief, the District argues that the damages the jury awarded were excessive, and thus asks the court enter an order of remittitur of the compensatory and actual damages awards, or alternatively, to order a new trial on this issue of damages. As

noted earlier, in returning a verdict in favor of Moore on her hostile work environment claim, the jury awarded her $825,000 in compensatory damages and $60,000 in actual damages. For the reasons explained below, the court agrees that remittitur of both the compensatory and actual damages is appropriate.

## A. Compensatory Damages

On the issue of compensatory damages, under Title VII there is a statutory cap of $300,000 for claims against an employer like the District. 42 U.S.C. § 1981a(b)(3)(D). As a result, Moore concedes that the compensatory damages must be reduced to $300,000. The court therefore remits the compensatory damages award to $300,000.

The District, however, urges the court to reduce the compensatory damages award even further, maintaining that Moore should not receive more than $100,000 in compensatory damages. The purpose of compensatory damages is to fairly compensate Moore for any humiliation, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and/or stress that she experienced as a result of a sexually hostile work environment. When reviewing an award for compensatory damages, the court considers "(1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003). Although the award must be supported by competent evidence, "a reviewing court must accord substantial deference to a jury's determination of compensatory damages[.]" *Ramsey v. Am. Air Filter Co., Inc.*, 772 F.2d 1303, 1313 (7th Cir. 1985). Further, in analyzing an award for compensatory damages, "it is important to bear in mind that our legal system confers on juries the function of placing a value

35

on pain and suffering, both emotional and physical. Judges do not inherently possess more wisdom than jurors in performing this function . . . ." *Deloughery v. City of Chicago*, No. 02 C 2722, 2004 WL 1125897, at *3 (N.D. Ill. May 20, 2004). Thus, in evaluating whether a jury award is excessive, courts "should 'take[] into account the jury's right to make awards based on its view of a witness's demeanor and credibility.'" *Id.* (quoting *Tullis v. Townley Eng'g & Mfg. Co., Inc.*, 243 F.3d 1058, 1069 (7th Cir. 2001)).

With these standards in mind, the court concludes that a $300,000 compensatory damages award in this case is roughly within the acceptable range, and thus declines to order further remittitur of the compensatory damages award. This case involved more than an isolated comment or action. By way of example only, the evidence showed that in addition to making graphic sexual comments to Moore, Allen repeatedly engaged in criminal conduct by exposing himself to her, that her supervisor physically harassed her in a sexual manner by grabbing her from behind by her breasts and lifting her off of the ground, that other supervisors were making bets about who would be the first to receive oral sex from her, and that Moore's complaints about such misconduct fell on deaf ears. The evidence further showed that Moore's personality and demeanor changed, that she began dressing differently to avoid comments and improper conduct by the male employees of the District, that Moore was frequently observed crying at work, that she suffered from migraine headaches that were exacerbated by stress, and that she was affected emotionally and mentally to the point where she sought counseling. An award of $300,000 in compensatory damages is rationally related to the evidence presented and is not "monstrously excessive." In seeking further remittitur, the District cites to several cases in which the compensatory damages award was below $100,000. *See, e.g., Bennett v. Smith*, No. 96 C 2422,

36

2000 WL 1849029, at *8 (Dec. 18, 2000) (ordering remittitur of compensatory damages from $240,000 to $45,000). However, there are also numerous cases in which courts have found that compensatory damages awards between $200,000 and $300,000 were warranted. *See, e.g.,* *Farfaras v. Citizens Bank & Trust Co. of Chicago*, No. 01 C 8720, 2005 WL 670523, at *4 (N.D. Ill. Mar. 21, 2005) (declining to order remittitur of $200,000 compensatory damages award); *Spina v. Forest Preserve Dist. of Cook County*, 207 F. Supp. 2d 764, 776 (N.D. Ill. 2002) (ordering remittitur from $3 million to $300,000 in compensatory damages in sexual harassment case for plaintiff who never sought mental health treatment); *Naeem v. McKesson Drug Co., Inc.*, No. 95 C 5425, 2002 WL 975315, at *1 (N.D. Ill. May 1, 2002) (award of $240,000 for emotional pain and suffering was not excessive). These latter cases persuade the court that an award of $300,000 for compensatory damages in Moore's case is not so high as to warrant further remittitur. For one thing, "[d]ue to the highly fact-specific nature of Title VII cases, [comparisons to other awards] are rarely dispositive." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003). There is no exact standard for fixing the amount to be awarded for compensatory damages. Moreover, as the Seventh Circuit explains, "[a]wards in other cases provide a reference point that assists the court in assessing reasonableness; they do not establish a range beyond which awards are necessarily excessive." *Id.*

Accordingly, for the reasons explained above, the court orders remittitur of the jury's compensatory damages award to the statutory cap of $300,000, but denies the District's request to remit the award further.

### B.     Actual Damages

The District also seeks remittitur of the actual damages award, arguing that because the

37

evidence does not support an award of $60,000, the jury's award for actual damages is "monstrously excessive." The court agrees that remittitur is warranted.[22]

According to the District, the most Moore is entitled to for actual damages falls between $720 and $2,400 for the cost of therapy. An award of $720 would cover the six therapy sessions Moore actually attended at $120/hour. An award of $2,400, on the other hand, would cover the cost of future therapy, based on Moore's treating therapist's testimony that someone with a diagnosis of adjustment disorder (like Moore) would normally attend 12 to 20 therapy sessions. The court declines to award damages to cover future therapy sessions because Moore's attendance at counseling was sporadic, and she gave up counseling of her own volition long before trial. An award of $720 for actual damages conforms with the evidence presented.

When a trial court finds a verdict excessive, unless the damages are erroneous as a matter of law (*e.g.*, the verdict exceeds the statutory limits or is based on clear errors in computation), the court must "present the plaintiff with the option of a reduction of damages or a new trial."[23] *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 256 (7th Cir. 1990). Here, remittitur of the actual damages award is warranted. Accordingly, Moore has until August 26, 2004 to accept a reduction of the actual damages award to $720, a reasonable amount based on the facts of this case. In the event Moore does not accept the reduction, however, the court will be

---

[22]Notably, aside from asking the court to affirm the jury's award, Moore makes no argument on this issue.

[23]Regarding the compensatory damages, on the other hand, because the statutory limits were exceeded, the court has authority to reduce the compensatory damages award to the statutory cap without giving Moore the option of a new trial. *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 256 (7th Cir. 1990) (In the event a trial court finds a verdict excessive because the verdict exceeds statutory limits, the court may unilaterally reduce the damage award.)

obligated to grant Moore's motion for a new trial solely on the issue of actual damages. *See id.*

## IV.    CONCLUSION

For the reasons explained above, *Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for Remittitur of the Damage Award, or for a New Trial* is granted in part and denied in part. Specifically, the court denies the District's motion for judgment as a matter of law as it relates to Moore's hostile work environment claim and denies the District's motion for a new trial to the extent it asserts that the conduct of the trial was unfair to the District and that the verdict was against the clear weight of the evidence. To the extent the District seeks remittitur of the damage award, or alternatively, a new trial on damages, that request is granted in part and denied in part. The compensatory damage award is hereby remitted to $300,000 to comply with the statutory cap. As for the actual damages, Moore has until August 26, 2005 to notify the court whether it accepts a reduction of the actual damages award to $720. In the event Moore does not accept the reduction of the actual damages, the court will be obligated to grant Moore's request for a new trial, limited to the issue of actual damages.


ENTERED:


*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge

Dated: August 12, 2005